Argued December 16, 1977, affirmed January 23, 1978

# STATE OF OREGON, *Respondent,*
### *v.*
# RONALD LEE McCORMICK, *Appellant.*
## (No. T-7-7621, CA 8931)
### 573 P2d 768

Randolph Lee Garrison, Roseburg, argued the cause for appellant. With him on the brief was Thomas Garrison, Roseburg.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Tanzer, Presiding Judge, and Johnson and Roberts, Judges.

JOHNSON, J.

**JOHNSON, J.**

Defendant appeals his conviction for driving while his operator's license was revoked in violation of ORS 484.740, part of the Habitual Traffic Offenders Act, which provides:

> "Except as provided in subsection (2) of ORS 484.735,[1] it shall be unlawful for any person to operate a motor vehicle in this state while the order of the court prohibiting such operation remains in effect. A person violating this section shall be guilty of a misdemeanor, and upon conviction shall be punished by confinement in the county jail for not less than 30 days or more than one year, and the sentence shall not be suspended nor shall the imposition of the sentence be deferred."

Defendant's operator's license was revoked on August 17, 1976, following his adjudication as an Habitual Offender. On March 29, 1977, he was granted a one-year renewable probationary license pursuant to ORS 484.735 which restricted him to driving "only in connection with self-employment as a carpenter Monday through Saturday, 7:00 am to 6:00 pm," and explicitly prohibited social driving. This probationary license was first issued in the form of a temporary permit, and the permit was superceded by the issuance of a Special Driver's License pursuant to ORS 482.270(3).[2] Defendant concedes that when arrested

---

[1] ORS 484.735(2) provides:

"(2) A one-year, renewable probationary license may be issued to a habitual offender if he:

"(a) Successfully completes a defensive driving course conducted by the division;

"(b) Continually satisfies the conditions of the probationary license; and

"(c) Submits a report of a diagnostic examination conducted by a private physician showing to the satisfaction of the State Health Officer that he is physically and mentally competent to drive."

[2] ORS 482.270(3) provides:

"(3) The division may issue a temporary driver's permit to an applicant for an operator's or chauffeur's license permitting him to operate a motor vehicle while the division is determining all facts relative to the applicant's right to receive a license. The permit must be

he was driving for social purposes. He maintains that the most he could have been charged with was a violation of ORS 482.280 for driving outside his license restrictions because he was in fact licensed to drive at the time of his arrest. He contends that if a person convicted as an habitual offender has obtained a probationary license under ORS 484.735, he comes under the exception and has a complete defense to the crime prohibited in ORS 484.740. Defendant's construction of ORS 484.735 and 484.740 is untenable. Reading the two together we conclude an habitual offender has a defense to a charge under ORS 484.740 only if he is driving within the conditions of his probationary license.

In *State v. Wise,* 30 Or App 959, 569 P2d 41 (1977), *rev den* (1978), we upheld a conviction for driving while suspended, ORS 487.560. In that case, defendant, while suspended, was granted an occupational license pursuant to ORS 482.478 restricting his driving to certain hours. We held that his license suspension was still in force for all times and purposes outside the restrictions. The statute at issue here compels the same conclusion as that reached in *Wise.* Defendant, driving for social purposes, was driving while his license was revoked.

Defendant also contends that he could not be convicted of driving while revoked because he was in effect issued an unrestricted license.[3] The record indicates he was issued a regular form license with a notation in large letters that it was "SPECIAL" and in

in the applicant's immediate possession while operating a motor vehicle. It shall be valid for a period of 30 days from the date issued, except that it shall become invalid when the applicant's license has been issued or, for good cause, has been refused. The division may, for sufficient cause, extend the term of the permit for not to exceed an additional 30 days."

[3]Defendant's temporary permit contained a recitation of the specific terms of the restriction. The Special Driver's License issued subsequently did not contain the specific terms.

the box denoting restrictions, the code number "9." On the back of the license, the restriction code key indicates that the license is subject to a restriction designated as "other" than those listed. ORS 482.280 provides in part:

"(1) The division, upon or after issuing an operator's or chauffeur's license, may, whenever good cause appears, impose restrictions suitable to the licensee's driving ability with respect to the type of motor vehicle, or special mechanical control devices required on a motor vehicle which the licensee may operate, or such other restrictions as the division may determine to be appropriate to insure the safe operation of a motor vehicle by the licensee.

"(2) *The division may issue a special restricted license or may set forth such restrictions on the usual license form.* A person to whom such license has been issued shall not operate a motor vehicle in any manner in violation of the restrictions imposed.

"* * * * *." (Emphasis supplied.)

We do not interpret this statute as requiring that the specific terms of the restriction appear on the face of the license. The notation "SPECIAL" indicates that it is a "special restricted license." Furthermore, the indications by code number of the restrictions is sufficient to satisfy the alternative statutory requirement of setting "forth such restrictions on the usual license form." The license form is obviously designed to be carried in one's pocket and it may be impractical to set out in detail all the restrictions. The amount of detail set forth in the restrictions is within the discretion of the administrator provided it is clear that the license is restricted and the licensee has notice of the terms of the restrictions. Defendant does not contend that he did not have notice.

Affirmed.